# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA

JOHNISHA KATES,
                    Plaintiff,

                                                   Case No.

v.

EXPERIAN INFORMATION SOLUTIONS, INC.
AND TRANS UNION, LLC
                    Defendant.
_____/

## PLAINTIFF'S COMPLAINT

COMES NOW, Plaintiff, by and through counsel, and for her Complaint against Defendants, Experian Information Solutions, Inc., and Trans Union, LLC, respectfully alleges as follows:

## I.  INTRODUCTION

1. Plaintiff, Johnisha Kates, a Florida resident, brings this action under Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. (the "FCRA") against Defendants, EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian") and TRANS UNION, LLC ("Trans Union") for violations of the Fair Credit Reporting Act 15 U.S.C. § 1681 et seq. which require consumer reporting agencies to clearly and accurately disclose all information in a consumer's file upon request and to establish reasonable procedures to assure maximum

PLAINTIFF'S COMPLAINT                    1

possible accuracy of consumer reports and failure to comply makes them liable under 15 U.S.C. § 1681(n) and 1681(o).

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

3. Plaintiff is a natural person and a legal resident of Bradenton, FL.

4. Defendants conduct business in the state of Florida; therefore, personal jurisdiction is established.

5. Venue is proper before this court pursuant to 28 U.S.C. § 1391(b) as Defendant conducts business in this district, communications, and a substantial part of the events or omissions giving rise to the claims herein occurred in Bradenton, FL.

## III.    PARTIES

6. Plaintiff, Johnisha Kates, is a "consumer" as defined by 15 U.S.C. § 1681a(c).

7. Defendant Experian is a "consumer reporting agency" defined by 15 USC § 1681a(f).

8. Experian Information Solutions, Inc., is a foreign company doing business at all relevant times in Florida that may be served with process by serving its registered agent for service of process, CT Corporation System, 1200 South

Pine Island Road, Plantation, FL, 33324, USA, which service is hereby requested.

9. Defendant Trans Union is a "consumer reporting agency" defined by 15 USC § 1681a(f).

10. Trans Union, LLC is a foreign limited liability company doing business at all relevant times in Florida that may be served with process by serving its registered agent for service of process, Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301, USA, which service is hereby requested.

11. Experian, and Trans Union are collectively referred to as "CRAs" or "Defendants."

## IV. FACTUAL BACKGROUND

### *Plaintiff's Consumer Disclosure*

12. Plaintiff requested a copy of Plaintiff's consumer credit disclosure from each of the Defendants.

13. Pursuant to 15 U.S.C. § 1681g(a), upon receipt of Plaintiff's request, each Defendant was required to "clearly and accurately" disclose all information in Plaintiff's file at the time of the request, with the limited exception that Plaintiff's Social Security number could be truncated upon Plaintiff's request.

14. Experian furnished an electronic copy of Plaintiff's Consumer Disclosure ("Experian Disclosure") to Plaintiff.

15. Trans Union furnished an electronic copy of Plaintiff's Consumer Disclosure ("Trans Union Disclosure") to Plaintiff.

### *Experian's Disclosure Was Not Complete, Clear, or Accurate*

### *Omitted Date of First Delinquency*

16. Despite a requirement to disclose all information in Plaintiff's credit file at the time of the request, Experian's Disclosure omitted significant amounts of information contained in Plaintiff's credit file.

17. Plaintiff's credit file contained one or more accounts being reported in which Experian's Disclosure omitted the Date of First Delinquency ("DOFD") for the account(s) at issue.

18. Pursuant to 15 U.S.C. § 1681s-2(a)(5), data furnishers are required to notify a consumer reporting agency of the date of delinquency when reporting any account placed for collection, charged off, or subjected to any similar action. On information and belief, the data furnishers reported the DOFD to Experian in compliance with § 1681s-2(a)(5), and that information was maintained within Experian's file regarding Plaintiff at the time of Plaintiff's request.

19. Despite possessing the DOFD information, Experian failed to disclose it to Plaintiff. Pursuant to 15 U.S.C. § 1681g(a)(1), Experian was required to clearly and accurately disclose all information in Plaintiff's file at the time of the request. The DOFD is squarely within that obligation; Experian's omission of it from Plaintiff's consumer disclosure is a direct violation of § 1681g(a)(1).

20. The DOFD is the operative date under 15 U.S.C. § 1681c(c), which governs the maximum permissible reporting period for adverse information. Section 1681c(c) requires CRAs to exclude from consumer reports any adverse item of information that antedates the report by more than seven years, measured from the date of the delinquency that gave rise to the adverse entry.

21. Without knowing the DOFD, a consumer has no meaningful way to determine whether an account is being reported within the permissible statutory window or whether it has been improperly re-aged, that is, whether the CRA or furnisher has manipulated the reporting timeline to keep adverse information on a consumer's file longer than the law allows.

22. By omitting the DOFD from Plaintiff's consumer disclosure, Experian rendered Plaintiff's disclosure patently incomplete and misleading. Plaintiff was deprived of the foundational date necessary to assess whether the accounts are being reported lawfully under § 1681c(c), whether any re-aging

has occurred, and whether a dispute is warranted, all in direct violation of 15 U.S.C. § 1681g(a)(1).

23. As a result of Experian's failure to disclose the DOFD, Plaintiff was deprived of the ability to determine whether the accounts had been improperly re-aged or reported beyond the permissible statutory period, creating a concrete risk of adverse effects, including the continued reporting of obsolete or inaccurate information that Plaintiff cannot effectively challenge without the DOFD.

24. Rather than comply with the FCRA, Experian knowingly and intentionally failed to disclose all of the information in Plaintiff's credit file, shifting the burden of disclosure and inquiry away from itself and onto Plaintiff.

25. The CDIA, a trade association representing the CRAs, including Experian, provides that:

> "This date "is used to ensure compliance with the Fair Credit Reporting Act, and that "[t]he date in the Date of First Delinquency field must be determined each reporting period based on" the applicable account status codes. The Date of First Delinquency is used by the consumer reporting agencies for purging purposes."

*SEE* EXHIBIT 1.

26. The CDIA thus recognizes the DOFD as a mandatory, compliance-driven data element that furnishers are required to report and that consumer reporting agencies, including Experian, are required to maintain and disclose. Despite this, Experian failed to disclose the DOFD to Plaintiff in Plaintiff's consumer disclosure.

27. On information and belief, data furnishers complied with the *Credit Reporting Resource Guide* and reported the date of first delinquency for their respective account(s) to Experian.

### *Plaintiff's Prior Disputes and Experian's and Trans Union's Failure to Notate*

28. Plaintiff previously disputed multiple accounts with Experian and Trans Union via certified mail, disputing the accuracy and completeness of the information being reported.

29. Experian and Trans Union received Plaintiff's disputes and forwarded them to the respective furnishers of the disputed account information, as required by 15 U.S.C. § 1681i(a)(2).

30. Upon receipt of Plaintiff's disputes, Experian and Trans Union were required, pursuant to 15 U.S.C. § 1681i(a)(1), to conduct a reasonable reinvestigation into the disputed information and to record the current status of the disputed information or delete the item within thirty (30) days of receiving the dispute.

31. On information and belief, the data furnishers complied with the CDIA, and upon receiving notification of Plaintiff's disputes from Experian and Trans Union, marked the accounts as disputed in accordance with their reporting obligations. Allegedly Equifax, upon completing their reinvestigation processes, also marked the accounts as disputed in Plaintiff's consumer file and in consumer reports furnished to third parties, as required by 15 U.S.C. § 1681i(c).

32. Pursuant to 15 U.S.C. § 1681i(c), whenever a statement of a dispute is filed, the consumer reporting agency shall, in any subsequent consumer report, clearly note that the item is disputed by the consumer in any subsequent consumer report containing the disputed information. This obligation applied to Experian and Trans Union upon receipt of Plaintiff's dispute.

33. Despite this statutory obligation, Experian and Trans Union failed to mark the disputed accounts as disputed in Plaintiff's consumer disclosure and in consumer reports furnished to third parties, even though Plaintiff had timely notified Experian and Trans Union of the dispute and the furnishers had marked the accounts as disputed.

34. The CDIA, a trade association representing the CRAs, including Experian and Trans Union, identifies the "Compliance Condition Code" as the

mechanism by which a consumer reporting agency and furnisher must reflect the disputed status of an account.

35. The CDIA provides that Compliance Condition Codes are used to reflect consumer disputes under the Fair Credit Billing Act ("FCBA"), the Fair Debt Collection Practices Act ("FDCPA"), or the direct dispute provisions of the Fair Credit Reporting Act ("FCRA") and its implementing rules, and that "[r]egardless of the method of reporting, the code will be deleted only when another Compliance Condition Code or the XR (Removal code) is reported." *SEE* EXHIBIT 2.

36. Despite Plaintiff's dispute, Experian and Trans Union failed to apply the appropriate Compliance Condition Code to the disputed accounts in Plaintiff's file. Experian's and Trans Union's failure to notate the disputed status of Plaintiff's accounts deprived Plaintiff of the protections afforded by 15 U.S.C. § 1681i(c) and allowed Experian and Trans Union to continue furnishing consumer reports to third parties that did not reflect Plaintiff's dispute, causing ongoing harm to Plaintiff's creditworthiness and reputation.

*TransUnion's Disclosure Was Not Complete, Clear, or Accurate*

*Omitted Current Balance*

37. Despite a requirement to disclose all information in Plaintiff's credit file at the time of the request, Trans Union's Disclosure omitted significant amounts of information contained in Plaintiff's credit file.

38. Trans Union's Disclosure failed to provide Plaintiff with complete and accurate account information. Specifically, Trans Union omitted the current balance for one or more accounts, thereby preventing Plaintiff from determining the actual balance information maintained in Trans Union's records.

39. Upon information and belief, the furnishers transmitted the current balance information for these tradelines to Trans Union, and such information was maintained within Trans Union's internal consumer file for Plaintiff at the time of the request for Plaintiff's disclosure. Yet Trans Union failed to disclose this information to Plaintiff.

40. Trans Union's failure to disclose a complete and accurate current balance prevents a consumer from understanding the full status of a tradeline. The current balance reflects the consumer's actual financial obligation, and without disclosure of this information, Plaintiff could not determine whether any balance remained owed or whether the account had been satisfied.

41. Furthermore, the CDIA, a trade association representing the CRAs, including Trans Union, requires Trans Union to, "Report the outstanding current balance on the account as of the Date of Account Information." *SEE* EXHIBIT 3.

42. Despite this, Trans Union failed to disclose this information to Plaintiff.

43. Despite being required to provide a full and complete disclosure of the information contained within its records, per 15 U.S.C. § 1681g(a), Trans Union thus shifted the burden of disclosure and inquiry away from itself and onto Plaintiff.

44. Without having access to all the information in Plaintiff's file, Plaintiff is unable to determine if there is additional inaccurate/ incomplete information that Plaintiff needs to dispute had Plaintiff been given the full file as required by law.

### *Omitted Account Information & Prevalence of Defendants' Errors*

45. Experian omitted full account numbers, complete account information, complete payment history, and the date of first delinquency for additional accounts, even though this information was reported by the data furnishers and maintained in Experian's files.

46. Trans Union omitted full account numbers, complete account information, complete payment history, and the current balance for additional accounts,

even though the furnishers had transmitted this complete information to Trans Union.

47. On information and belief, the respective data furnishers reported full account numbers, complete account information, and complete payment history to the Defendants. This information was contained within each Defendant's file regarding Plaintiff at the time of Plaintiff's request.

48. When Defendants produce and sell consumer reports regarding Plaintiff to third parties, the full account numbers, complete account information, complete payment history, current balance, original creditor names, dispute notation, and/ or the date of first delinquency are included in those reports. The accuracy of Defendant's third-party reports demonstrates both its ability to comply with 15 U.S.C. § 1681g(a).

49. Defendants had a duty to disclose all of the information in Plaintiff's file and breached that duty by withholding the foregoing account data. Without such information, a consumer is reduced to, at best, playing detective and, at worst, guessing as to whether the information in their report is accurate.

50. The failure to disclose full account numbers violates the FCRA's requirement that a CRA disclose all information contained in a consumer's credit file clearly and accurately. *See Washington v. Equifax,* Case No. 3:19-cv-00154 (M.D. Tenn. Jun. 12, 2019) (holding that truncation of

account numbers states a plausible claim for a violation of Section 609 of the FCRA).

51. Further, pursuant to a 2000 FTC Opinion Letter (Advisory Opinion to Darcy, June 30, 2000), "it is our view that a CRA that always scrambles or truncates account (or social security) numbers does not technically comply with Section 609 because it does not provide 'accurate' (and perhaps not 'clear') disclosure of 'all information' in the file," see Exhibit 4.

52. On information and belief, each Defendant's consumer disclosure to Plaintiff was generated using a template that extracts database information from a consumer's file and populates it into various pre-programmed fields on a consumer disclosure form. These same templates are used virtually every time a consumer requests their file.

53. Experian's disclosures retrieved directly from Experian all exhibit the same incomplete account number, missing account information, missing payment history errors, missing dispute notation, and/or missing Date of First Delinquency error.

54. Trans Union's disclosures retrieved through www.annualcreditreport.com all exhibit the same incomplete account number, missing balance, missing account information, missing dispute notation, and/or missing payment history errors.

55. Each Defendant has known of the flaws in its respective systems for years but has done nothing to fix them. *See, e.g., Justin Purdy v. Equifax Information Services LLC,* Case No. 8:19-cv-00217, M.D. FL, Jan. 28, 2019.

56. The Supreme Court has instructed that any interpretation of the FCRA must have a foundation based in the language of the statute. *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 69 (2007). Consistent with this instruction, the Second Circuit has held that 15 U.S.C. § 1681g "requires consumer reporting agencies to 'clearly and accurately disclose ... [a]ll information,' not 'all accurate information.'" *Selvam v. Experian Information Solutions, Inc.,* 651 Fed. Appx. 29, 33 (2d Cir. 2016) (emphasis in original). Accordingly, each Defendant's obligation under § 1681g(a)(1) extends to all information maintained in Plaintiff's file, regardless of whether that information is disputed or undisputed,  and each Defendant's failure to disclose the complete contents of Plaintiff's file constitutes a violation of that obligation.

57. Defendant's knowing and repeated conduct warrants an award of ***punitive damages.*** Defendant's failure to disclose all of the information in the consumer's credit file is an intentional violation of 15 U.S.C. § 1681g(a), motivated by the desire to avoid costs and increase profits.

58. Plaintiff has a right to a full and complete disclosure of the contents of Plaintiff's file upon demand, at least once a year and without charge, presented clearly and accurately, pursuant to 15 U.S.C. § 1681j. Each Defendant's failure to accurately, fully, and clearly disclose the information within its files regarding Plaintiff deprived Plaintiff of this right.

### *Plaintiff's Injury and Standing*

59. The failure of an entity to provide accurate and truthful information as required by law creates an injury-in-fact, thus creating standing pursuant to Article III. *See, e.g., Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982) (holding that an alleged injury to a plaintiff's statutorily created right to truthful housing information was a cognizable injury in and of itself, regardless of whether the plaintiff actually hoped to reside in the defendant's housing complex; therefore the Article III requirement of injury in fact was satisfied).

60. Due to widespread systemic problems, Experian's automated systems omit the Date of First Delinquency and dispute notations from consumer disclosures, despite this information being furnished by data furnishers and maintained within Experian's files. Trans Union's automated systems omit the Current Balance and dispute notation from consumer disclosures, despite

this information being furnished by data furnishers and maintained in Trans Union's files.

61. On information and belief, Defendant's Disclosure to Plaintiff was generated using a template that extracts database information from a consumer's file and populates it into various pre-programmed fields on a consumer disclosure form, and this same template is used virtually every time a consumer requests their file from each Defendant.

62. Every consumer who requested their disclosure from each Defendant since the template's use began received a consumer disclosure with the same deficiency as Plaintiff. Defendants know of this error but, despite such knowledge, have yet to correct it. Defendants' knowing and repeated conduct warrants an award of punitive damages and is an intentional violation of 15 U.S.C. § 1681g(a), motivated by the desire to avoid costs and increase profits.

63. Despite withholding this information from Plaintiff, Defendants routinely include the date of first delinquency, dispute notations, and current balance information when it prepares and sells consumer reports regarding Plaintiff to third-party users, thereby demonstrating that such information is maintained in Defendant's file and that Defendants are capable of disclosing it in compliance with 15 U.S.C. § 1681g(a).

64. Defendants had a statutory duty to disclose all information contained in Plaintiff's consumer file at the time of Plaintiff's request. By failing to provide the current balance information, dispute notations, and/or date of first delinquency, Defendants breached their duty and deprived Plaintiff of information necessary to meaningfully review and assess the accuracy of Plaintiff's credit file.

65. Without access to this complete information, Plaintiff was left unable to verify the accounts against Plaintiff's own records, forcing Plaintiff to speculate as to the accuracy and completeness of the information reported by each Defendant.

66. Defendants' omission of full account numbers, complete account information, complete payment history, date of first delinquency, dispute notations, and current balance information greatly decreases Plaintiff's ability to understand their consumer credit disclosure, identify the accounts, and compare those accounts with their own records. These omissions caused Plaintiff great frustration and emotional distress when trying to understand Plaintiff's credit report and verify it against Plaintiff's own financial records.

67. Plaintiff suffered a concrete informational injury when Defendants failed to provide complete disclosures of all information contained in Plaintiff's consumer files as required by 15 U.S.C. § 1681g. By withholding the

foregoing information, Defendants deprived Plaintiff of information to which Plaintiff was statutorily entitled and prevented Plaintiff from determining the true status of Plaintiff's accounts and from meaningfully reviewing the accuracy and completeness of Plaintiff's credit file. Therefore, forcing Plaintiff to speculate about the completeness and accuracy of the information being maintained and potentially furnished to third parties.

68. Defendants' actions and inactions caused significant harm to Plaintiff, including but not limited to: preventing Plaintiff from identifying and correcting errors found in the credit file; obstructing Plaintiff's statutory right to dispute inaccurate or incomplete information; subjecting Plaintiff to frustration, confusion, and unnecessary delay; increasing Plaintiff's risk of credit denials and exposure to unfavorable credit terms; causing emotional distress, anxiety, and embarrassment; and forcing Plaintiff to waste substantial time and resources attempting to remedy incompleteness and inaccuracies.

69. On one or more occasions during the relevant period, one or more third parties, including but not limited to prospective creditors, lenders, employers, landlords, and/or other permissible purpose users, obtained and reviewed consumer reports prepared and furnished by one or more Defendants regarding Plaintiff. These third parties reviewed consumer

reports that contained incomplete, inaccurate, and misleading information as a direct result of Defendants' violations described herein, including but not limited to truncated account numbers, missing Date of First Delinquency, missing dispute notation, and missing current balance information.

70. As a result of third parties reviewing these deficient consumer reports, Plaintiff suffered actual damages, including but not limited to denial of credit, denial of employment, denial of housing, receipt of less favorable credit terms and interest rates, damage to creditworthiness and reputation, and other economic and non-economic harm in an amount to be proven.

## V.  VIOLATIONS OF 15 U.S.C. § 1681g

## COUNT I- WILLFUL VIOLATIONS OF 15 U.S.C. § 1681g

71. Experian willfully violated 15 U.S.C. § 1681g(a)(1) when responding to Plaintiff's request for Plaintiff's consumer disclosure by failing to clearly and accurately disclose all information in Plaintiff's file at the time of the request. Specifically, Experian disclosed accounts without providing the Date of First Delinquency and dispute notation, even though the DOFD and dispute notations were reported by the data furnishers to Experian and maintained in Experian's files.

72. Trans Union willfully violated 15 U.S.C. § 1681g(a)(1) when responding to Plaintiff's request for Plaintiff's consumer disclosure by failing to clearly

and accurately disclose all information in Plaintiff's file at the time of the request. Specifically, Trans Union disclosed accounts without providing the current balances and dispute notation, even though the current balance and dispute notations were reported by the data furnishers to Trans Union and maintained in Trans Union's files.

73. Each Defendant's violations were willful, as each knew or should have known that the information at issue was maintained within its respective file and was required to be disclosed to Plaintiff under 15 U.S.C. § 1681g(a)(1). Each Defendant's violations are further evidenced by its longstanding awareness of these systemic disclosure failures, which have been identified and disputed by other consumers for years.

74. Each Defendant is therefore liable to Plaintiff, pursuant to 15 U.S.C. § 1681n, for the greater of Plaintiff's actual damages and statutory damages of up to $1,000 per violation, plus punitive damages and attorneys' fees and costs.

## COUNT II — NEGLIGENT VIOLATIONS OF § 1681g

75. Alternatively, Experian negligently violated 15 U.S.C. § 1681g(a)(1) when responding to Plaintiff's request for Plaintiff's consumer disclosure by failing to clearly and accurately disclose all information in Plaintiff's file at the time of the request. Specifically, Experian disclosed accounts without

providing the Date of First Delinquency and dispute notations, even though the DOFD and dispute notations were reported by the data furnishers to Experian and maintained in Experian's files.

76. Alternatively, Trans Union negligently violated 15 U.S.C. § 1681g(a)(1) when responding to Plaintiff's request for Plaintiff's consumer disclosure by failing to clearly and accurately disclose all information in Plaintiff's file at the time of the request. Specifically, Trans Union disclosed accounts without providing the current balances and dispute notations, even though the current balance and dispute notations were reported by the data furnishers to Trans Union and maintained in Trans Union's files.

77. Defendants had a legal duty to provide Plaintiff with a clear and accurate disclosure of all information within their respective files at the time of Plaintiff's request, and breached that duty as set forth above.

78. Defendants are therefore liable to Plaintiff, pursuant to 15 U.S.C. § 1681o, for Plaintiff's actual damages, plus attorneys' fees and costs.

## VI. VIOLATIONS OF 15 U.S.C. § 1681e(b)

## COUNT III — WILLFUL VIOLATIONS OF § 1681e(b)

79. Section 1681e(b) of the FCRA requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

80. Experian willfully violated 15 U.S.C. § 1681e(b) by failing to establish and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer disclosure. Specifically, Experian systematically failed to reliably integrate and incorporate furnished account data, including the Date of First Delinquency, dispute notation, and complete account information, into the consumer disclosure it prepared, resulting in a prepared disclosure that is incomplete and misleading.

81. Trans Union willfully violated 15 U.S.C. § 1681e(b) by failing to establish and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer disclosure. Specifically, Trans Union systematically omitted current balance information and dispute notations from consumer disclosures, despite possessing that information and regularly furnishing it to third-party users of consumer reports.

82. These violations were willful, not merely negligent, and were carried out through systematic procedures that prioritized internal efficiency over the accuracy and completeness of consumer disclosures, reflecting an institutional disregard for each Defendant's statutory obligations under the FCRA.

83. Each Defendant is therefore liable to Plaintiff, pursuant to 15 U.S.C. § 1681n, for the greater of Plaintiff's actual damages and statutory damages of

up to $1,000 per violation, plus punitive damages and attorneys' fees and costs.

## COUNT IV — NEGLIGENT VIOLATIONS OF § 1681e(b)

84. Alternatively, Experian negligently violated 15 U.S.C. § 1681e(b) by failing to establish and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer disclosure. Specifically, Experian systematically failed to reliably integrate and incorporate furnished account data, including the Date of First Delinquency, dispute notations, and complete account information, into the consumer disclosure it prepared, resulting in a prepared disclosure that is incomplete and misleading.

85. Alternatively, Trans Union negligently violated 15 U.S.C. § 1681e(b) by failing to establish and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer disclosure. Specifically, Trans Union systematically omitted current balance information and dispute notations from consumer disclosures, despite possessing that information and regularly furnishing it to third-party users of consumer reports.

86. Defendants had a legal duty to follow reasonable procedures to assure maximum possible accuracy in the preparation of consumer reports and

consumer disclosures, and each Defendant breached that duty as set forth above.

87. Defendants are therefore liable to Plaintiff, pursuant to 15 U.S.C. § 1681o, for Plaintiff's actual damages, plus attorneys' fees and costs.

## VII. VIOLATIONS OF 15 U.S.C. § 1681(i)

## COUNT V- WILLFUL VIOLATION OF § 1681(i)

88. Section 1681i(c) of the FCRA requires that if the completeness or accuracy of any item of information contained in a consumer's file is disputed by the consumer and the consumer notifies the consumer reporting agency of such dispute, the agency shall, free of charge, clearly note that the item is disputed by the consumer in any subsequent consumer report containing the disputed information.

89. Experian and Trans Union willfully violated 15 U.S.C. § 1681i(c) by failing to notate the disputed status of Plaintiff's accounts in Plaintiff's disclosure and in consumer reports furnished to third parties following Plaintiff's dispute. Specifically, despite receiving Plaintiff's written dispute, receiving confirmation from the furnishers that the accounts were marked as disputed, and despite Equifax allegedly having complied with § 1681i(c) by noting the dispute, Experian and Trans Union continued to furnish consumer reports to

third parties that did not reflect Plaintiff's dispute in direct violation of its statutory obligation.

90. Experian's and Trans Union's failure to notate the dispute was willful. Experian and Trans Union knew or should have known of its obligation under § 1681i(c) to mark disputed accounts accordingly, and its failure to do so was the result of its systematic disregard for the dispute notation requirement. Experian's and Trans Union's knowing and repeated conduct warrants an award of punitive damages.

91. Experian and Trans Union is therefore liable to Plaintiff, pursuant to 15 U.S.C. § 1681n, for the greater of Plaintiff's actual damages and statutory damages of up to $1,000 per violation, plus punitive damages and attorneys' fees and costs.

## COUNT VI- NEGLIGENT VIOLATION OF § 1681(i)

92. Alternatively, Experian and Trans Union negligently violated 15 U.S.C. § 1681i(c) by failing to notate the disputed status of Plaintiff's accounts in Plaintiff's disclosure and in consumer reports furnished to third parties following Plaintiff's dispute. Specifically, despite receiving Plaintiff's written dispute, receiving confirmation from the furnishers that the accounts were marked as disputed, and despite Equifax allegedly having complied with § 1681i(c) by noting the dispute, Experian and Trans Union continued

to furnish consumer reports to third parties that did not reflect Plaintiff's dispute in direct violation of its statutory obligation.

93. Experian's and Trans Union's failure to notate the dispute was negligent. Experian and Trans Union knew or should have known of its obligation under § 1681i(c) to mark disputed accounts accordingly, and its failure to do so was the result of its systematic disregard for the dispute notation requirement. Experian's and Trans Union's knowing and repeated conduct warrants an award of punitive damages.

94. Experian and Trans Union is therefore liable to Plaintiff, pursuant to 15 U.S.C. § 1681o, for Plaintiff's actual damages, plus attorneys' fees and costs.

## VIII.  RIGHT TO AMEND

These allegations against Defendant are made acknowledging that this complaint is still under Investigation and in Discovery. As further investigation and discovery are conducted, additional facts will surely be uncovered that may and probably will necessitate further, additional, and/or different allegations.

## IX.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Johnisha Kates, respectfully requests that an award be entered in favor of Plaintiff and against Defendant, for all damages allowable,

costs, expenses, attorney fees, injunctive relief to prevent further violations, and for such other and further relief as may be just and proper.

## X. DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

Respectfully Submitted,

Dated: May 7, 2026

*/s/ Miranda Jackson*
Miranda Jackson, Esq.
FBN 0098593
Attorney for Plaintiff
Your Good Lawyers
501 N Magnolia Ave
Orlando, FL 32801
(407) 710-0130
civil@yourgoodlawyers.com

## EXHIBIT 1

# Field Definitions

## Base Segment

| FIELD | FIELD NAME & DESCRIPTION | 426 Character Format | | |
|---|---|---|---|---|
| | | Length | Position | Recording Technique |
| 25 | **FCRA Compliance/Date of First Delinquency**<br><br>This date is used to ensure compliance with the Fair Credit Reporting Act.<br><br>The date in the Date of First Delinquency field must be determined each reporting period based on the following hierarchy:<br><br>1. For Account Status Codes 61-65, 71, 78, 80, 82-84, 88-89 and 93-97, report the date of the first 30-day delinquency that led to the status being reported. This date should be 30 days after the Due Date. If a delinquent account becomes current, the Date of First Delinquency should be zero filled. Then if the account goes delinquent again, the Date of First Delinquency starts over with the new first delinquency date.<br><br>2. For Account Status Codes 05 and 13, if the Payment Rating is 1, 2, 3, 4, 5, 6, G or L, report the date of the first 30-day delinquency that led to the Payment Rating being reported. This date should be 30 days after the Due Date.<br><br>3. For Consumer Information Indicators A-H and Z (Bankruptcies), 1A (Personal Receivership) and V-Y (Reaffirmation of Debt Rescinded with Bankruptcy Chapters), if the account is current (Account Status Code 11 or Account Status Code 05 or 13 with Payment Rating 0), report the date of the bankruptcy/personal receivership petition or notification. Even though the account is not delinquent, this date is required for purging purposes.<br><br>If none of the conditions listed in the above hierarchy apply, the Date of First Delinquency should be zero filled.<br><br>**Note: Consumer Information Indicators W, X and Y are obsolete for reporting as of September 2010, Consumer Information Indicator Z is obsolete for reporting as of April 2021, and Account Status Code 05 is obsolete for reporting as of April 2022. These codes may no longer be reported.**<br><br>The Date of First Delinquency is used by the consumer reporting agencies for purging purposes. Format for character date is MMDDYYYY. Format for packed date is 0MMDDYYYYs — where s is the sign.<br><br>**Notes:**<br><br>• **Refer to Exhibit 9 for detailed reporting instructions, examples and excerpts from the Fair Credit Reporting Act.**<br><br>• **First-time reporters should refer to Frequently Asked Question 22 for important information.** | 8 | 190-197 | N |

## EXHIBIT 2

# Field Definitions

## Base Segment

| FIELD | FIELD NAME & DESCRIPTION | 426 Character Format | | |
| --- | --- | --- | --- | --- |
| | | Length | Position | Recording Technique |
| 20 | **Compliance Condition Code**<br><br>Allows the reporting of a condition that is required for legal compliance.<br><br>Compliance Condition Codes are used to reflect accounts closed at consumer's request, and consumer disputes under the Fair Credit Billing Act (FCBA), the Fair Debt Collection Practices Act (FDCPA), or the direct dispute provisions of the Fair Credit Reporting Act (FCRA) and its implementing rules.<br><br>The code should be reported each month as long as the condition applies.  As an option, the code may be reported one time and will remain on file until another Compliance Condition Code or the **XR** (Removal code) is reported.  **Regardless of the method of reporting, the code will be deleted *only* when another Compliance Condition Code or the XR (Removal code) is reported.**<br><br>Exhibit 8 provides a list of Compliance Condition Codes and examples that demonstrate how to report these codes.<br><br>For questions about the use of Compliance Condition Codes or how long to report them, data furnishers should refer to their internal policies and procedures. | 2 | 153-154 | AN |

EXHIBIT 3

# Field Definitions

## Base Segment

| FIELD | FIELD NAME & DESCRIPTION | 426 Character Format | | |
|-------|--------------------------|--------|----------|-----------------------|
| | | Length | Position | Recording Technique |
| 21 | **Current Balance**<br><br>Report the outstanding current balance on the account as of the Date of Account Information.<br><br>The Current Balance should contain the principal balance including Balloon Payment Amounts (when applicable), as well as applicable interest, late charges, fees, insurance payments and escrow that are due during the current reporting period. The Current Balance may exceed the Highest Credit, Original Loan Amount or Credit Limit.<br><br>The Current Balance should **not** include <u>future</u> interest, escrow, fees or insurance payments.<br><br>This amount, which should be reported in whole dollars only, may increase or decline from month to month.  Credit balances (negative balances) should be reported as zero. | 9 | 155-163 | N |
| 22 | **Amount Past Due**<br><br>Report the total amount of payments that are 30 days or more past due in whole dollars only. This field should include late charges and fees, if applicable.  **Do not include current amount due in this field.**<br><br>**Notes: If the Account Status is 11 (current), this field should be zero.**<br><br>**If the Account Status is 93 (account assigned to internal or external collections) or 97 (unpaid balance reported as a loss – charge-off), this field may equal the Current Balance.** | 9 | 164-172 | N |
| 23 | **Original Charge-off Amount**<br><br>For Status Codes 64 and 97 (all portfolio types), report the original amount charged to loss, regardless of the declining balance.  Report whole dollars only.<br><br>If payments are received from the consumer, report the outstanding balance in the Current Balance and Amount Past Due fields.<br><br>Refer to <u>Frequently Asked Question 34</u> for reporting guidelines on charged off and paid charged off accounts. | 9 | 173-181 | N |

CREDIT REPORTING RESOURCE GUIDE®

*Copyright 2024 © Consumer Data Industry Association*

Return to Table of Contents

EXHIBIT 4



**FEDERAL TRADE COMMISSION**
PROTECTING AMERICA'S CONSUMERS

//////////////////////

# Advisory Opinion to Darcy (06-30-00)

June 30, 2000

Denise A. Darcy, Esq.
Asst. General Counsel
TRANS UNION
555 West Adams Street
Chicago, Illinois 60661

Dear Ms. Darcy:

This responds to your letter dated concerning whether the Fair Credit Reporting Act ("FCRA") allows Trans Union or another consumer reporting agency ("CRA"), for security purposes, to "truncate, scramble or mask the account number and social security number" when making file disclosures to consumers. You report that such a procedure has been recommended to you by a consumer who was recently the victim of account takeover fraud by a perpetrator who fraudulently procured the individual's Trans Union file by impersonating the consumer. You state: "While some creditors truncate or scramble the data before they supply it to us, not all do; therefore, many of the account numbers on our file are complete and accurate, and that is what we disclose to the consumer."

Section 609(a)(1) of the FCRA states that CRAs, including major credit bureaus such as Trans Union, "shall, upon request (by a consumer), clearly and accurately disclose to the consumer . . . *All information* in the consumer's file at the time of the request" (emphasis added). If the "information in the consumer's file at the time of the request" includes account and social security numbers, the provision thus normally requires that the CRA "clearly and accurately" include such items in its disclosure to consumers. However, because the trigger for a file disclosure is a "request" by a consumer, a CRA may allow consumers (such as the individual in your letter) to choose truncation or other security measures in their own file disclosure. In other words, although Section 609 provides consumers with a right to *all information* in the file, a CRA may provide a method for the consumer to ask for less than all information and then comply with that "request" when it makes the disclosure.

In sum, it is our view that a CRA that always scrambles or truncates account (or social security) numbers does not technically comply with Section 609 because it does not provide "accurate" (and perhaps not "clear") disclosure of "all information" in the file. However, if a consumer's "request" for a file disclosure is framed so as to allow some items in the file to be abbreviated or revised in that fashion, a CRA making such a disclosure would comply with Section 609.

The opinions set forth in this informal staff letter are not binding on the Commission.

Sincerely yours,

Clarke W. Brinckerhoff